UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 21-cr-147 (CKK) |
| : | |
| CHRISTOPHER SPENCER, : | |
| : | |
| Defendant : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits this opposition to the Defendant's Motion to Dismiss Count One of the indictment.

## INTRODUCTION

The defendant, Christopher Spencer, has moved to dismiss ("MTD") Count One of the Indictment pursuant to Fed. Crim. P. 12(b). ECF No. 102. The defendant claims first that Section 1512(c)(2) does not cover the defendant's conduct in the instant offense; second, the certification of the electoral vote was not an official proceeding, but rather just a ceremonial proceeding, and third, Section 1512(c)(2) is unconstitutionally vague. However, the Circuit's decision in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023), rejected each of the defendant's arguments, and thus, this Court must deny the defendant's motion.

There appearing to be no material facts in dispute, a hearing on the motion is not needed.

## BACKGROUND

The defendant, Christopher Spencer, is charged in a five-count Superseding Indictment that was returned on March 10, 2021. The defendant is charged with violating Title 18, United States Code, Sections 1512(c)(2) and 2 (Obstruction of an Official Proceeding and Aiding and

1

Abetting) (Count 1); Title 18, United States Code, Section 1752(a)(1)) (Entering and Remaining in a Restricted Building or Grounds) (Count 2); Title 18, United States Code, Section 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds) (Count Three); Title 40, United States Code, Section 5104(e)(2)(D) (Disorderly and Disruptive Conduct in the Capitol Building) (Count Four); and Title 40, United States Code, Section 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building) (Count Five).

These charges stem from the defendant's unlawful conduct at the U.S. Capitol on January 6, 2021. On that date, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. Vice President Pence, who was under United States Secret Service ("USSS") protection, was present at the United States Capitol Building that day. The U.S. Capitol Police ("USCP"), with authority over security on Capitol Grounds, set up security barriers on the restricted area that read, "Area Closed By order of the United States Capitol Police Board." The Lower West Terrace on the West Front was closed to members of the public. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

The defendant and his wife, Jenny Spencer, and minor child were part of the large mob that descended on the Capitol and the restricted grounds that day. The defendant and his wife spent time in the crowd by the inauguration stage on the west side of the U.S. Capitol Building, observing members of the crowd attacking law enforcement repeatedly as they tried to keep the

crowd away from the building. They then went up the northern set of stairs underneath the scaffolding to the northwest terrace near the Senate wing of the building.

The defendant, his wife and minor child entered the Senate Wing Door at approximately 2:19 p.m., which had been broken open not long before, with windows that were broken out on either side. They then went into the Crypt where other crowd members again attacked a line of officers trying to hold back the crowd. During this time, the defendant filmed a Facebook live video during which he stated, *inter alia*, "Bro, they just stormed the Capitol. Bro…pushed the cops out of the way, everything…took it over" and "Don't stop!" to rioters as they surged forward.

The defendant, his wife and minor child went through the Crypt and up the stairs to the second floor. There, they went briefly into a hallway of offices belonging to Speaker Pelosi while the defendant livestreamed video in which he said, "Where's Nancy's office?"

The defendant, his wife and minor child crossed through Statuary Hall and joined another crowd in the Statuary Hall Connector outside the House of Representatives who were trying to gain access to the House Chamber, wherein members of Congress were sheltering. During this time, the defendant continued to film a video in which he said, *inter alia*, "Who would've knew (sic) the first time I ever come (sic) would be to storm" and "Kick that motherfucker open!" in reference to the main House Chamber door.

After a time, they went down the hall towards the east side of the building where the defendant continued to film himself saying "What up, Alec? We done (sic) stormed the Capitol building, bro. They done (sic) teared us" and "Smile motherfucker! Smile bitch! Fucking traitor!" to Capitol Police who were then involved in a scuffle with another rioter. The defendant and his wife ultimately exited the Capitol onto the portico outside the House of Representatives on the east side. In sum, the defendant spent just over 30 minutes inside of the Capitol.

Two weeks after the attack on the Capitol, FBI agents interviewed the defendant at his home in North Carolina. The defendant admitted seeing people climbing the walls and scaffolding outside the Capitol and admitted that he knew these were signs that things were wrong. The defendant also admitted that police were firing pepper balls at the rioters but rather than leave, the defendant pushed forward to the Capitol, which he admitted entering. The defendant admitted yelling, but when confronted with his specific statements, he repeatedly deflected and stated that lots of people were yelling things like he was.

In connection with his actions on January 6, 2021, the defendant was arrested on January 19, 2021, and charged with five charges via a criminal complaint. *See* ECF No 1. On March 10, 2021, the defendant was indicted by a federal grand jury. *See* ECF No. 14.

## **LEGAL STANDARD**

A defendant may move to dismiss an indictment or count prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B). A pretrial motion may challenge "a defect in the indictment or information" if "the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." *Id*. Although a court's supervisory powers provide the authority to dismiss an indictment, "dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015).

An "indictment must be viewed as a whole" and the "allegations must be accepted as true" in determining if an offense has been properly alleged. *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed. *Id.*

**ARGUMENT**

The defendant puts forth a litany of reasons why count one should be dismissed, all of which were rejected in the D.C. Circuit's decision in *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). Likewise, this Court has previously rejected most of the Defendants' arguments in *United States v. Grider*, 21-cr-22, 585 F. Supp. 3d 21 (D.D.C. 2022).[1]

**III. The Court must deny the defendant's motion to dismiss in light of the Circuit's decision in *Fischer*.**

The defendant, like many before him, argues Count One should be dismissed under the theory articulated in Judge Nichols' decision in *United States v. Miller,* 1:21-CR-119 (CJN) and Judge Katsa's dissent in *United States v. Fischer,* 64 F.4th 329 (D.C. Cir. 2023). However, the majority in *Fischer* directly rejected several these arguments and now, so too, must this Court.

    **A.**    **Section 1512(c)(2) "encompasses all forms of obstructive conduct"**

First, the defendant argues that "for Count One to sufficiently allege a violation, [Count One] must allege that Mr. Spencer took some action with respect to a document, record, or other object." (ECF 102 at 6) (citing *United States v. Miller*, 589 F. Supp. 3d 60, 78 (D.D.C. 2022), *rev'd and remanded sub nom. United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023)). The indictment, however, properly states an offense under 18 U.S.C. § 1512(c)(2).

---

[1] The defendant's arguments have also been rejected by the majority of judges in this District. *See, e.g., United States v. Fitzsimons*, 21-cr-158, 605 F. Supp. 3d 132 (D.D.C. 2022) (Contreras, J.); *United States v. Bingert*, 21-cr-91, 605 F. Supp. 3d 111 (D.D.C. 2022) (Lamberth, J.); *United States v. Hale-Cusanelli*, 21-cr-37, ECF 82 (D.D.C. May 6, 2022) (McFadden, J.) (motion to dismiss hearing at pp. 4-8); *United States v. McHugh* (*McHugh II*), 21-cr-453, 2022 WL 1302880 (D.D.C. May 2, 2022) (Bates, J.); *United States v. Bozell*, 21-cr-216, 2022 WL 474144, at *5 (D.D.C. Feb. 16, 2022) (Bates, J.); *United States v. Nordean*, 21-cr-175, 579 F. Supp. 3d 28 (D.D.C. 2021) (Kelly, J.); *United States v. Montgomery*, 21-cr-46, 578 F. Supp. 3d 54 (D.D.C. 2021) (Moss, J.); *United States v. Mostofsky*, 21-cr-138, 579 F. Supp. 3d 9 (D.D.C. 2021) (Boasberg, J.); *United States v. Caldwell*, 21-cr-28, 581 F. Supp. 3d 1 (D.D.C. 2021) (Mehta, J.); *United States v. Sandlin*, 21-cr-88, 575 F. Supp. 3d 16 (D.D.C. 2021) (Friedrich, J.).; *United States v. Puma*, 596 F. Supp. 3d 90 (D.D.C. 2022) (Friedman, J.).

In *Fischer*, the D.C. Circuit addressed a pretrial ruling that Section 1512(c)(2) "'requires that the defendant have taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding.'"  64 F.4th at 334.  Because the indictments in the cases on appeal did not allege that the defendants "violated § 1512(c)(2) by committing obstructive acts related to 'a document, record, or other object,' the district court dismissed the § 1512(c)(2) counts." *Id.*  The government appealed and the D.C. Circuit reversed, holding Section 1512(c)(2) "encompasses all forms of obstructive conduct, including . . . efforts to stop Congress from certifying the results of the 2020 presidential election." *Id.* at 335.  The court concluded that, "[u]nder the most natural reading of the statute, § 1512(c)(2) applies to all forms of corrupt obstruction of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)." *Id.* at 336 (concluding that this "broad interpretation of the statute—encompassing all forms of obstructive acts—is unambiguous and natural, as confirmed by the 'ordinary, contemporary, common meaning' of the provision's text and structure") (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).  This portion of the opinion was authored by Judge Pan and joined by Judge Walker, and thus constitutes *Fischer*'s binding holding.  *Fischer* thus confirms that the indictment in this case is sufficient notwithstanding the fact that it does not allege obstructive acts related to a document, record, or other object.  *See Fischer*, 64 F.4th at 332; *see also Puma*, 596 F. Supp. 3d at 106-08 ("In sum, Section 1512(c)(2) gives defendants fair warning in plain language that a crime will occur in a different ('otherwise') manner compared to § 1512(c)(1) if the defendant 'obstructs, influences, or impedes any official proceeding' without regard to whether the action relates to documents or records.") (citing *United States v. Caldwell*, 581 F. Supp. 3d 1, 21 (D.D.C. 2021)).

B.     **"Official proceeding" includes Congress's certification of the Electoral College vote**

Second, the defendant argues that Congress's constitutionally mandated process of counting the electoral college votes of the presidential election and certifying the next President and Vice President of the United States does not constitute an "official proceeding." (ECF 102 at 6-10). Instead, the defendant claims, the term "official proceeding" narrowly includes those proceedings that are "tribunal-like" in nature. *Id.* Again, both the D.C. Circuit and this Court have rejected this argument.

"The statutory definition of 'official proceeding' under § 1512(c)(2)," the D.C. Circuit has held, "includes a 'proceeding before the Congress.'" *Fischer*, 64 F.4th at 342-43 (quoting 18 U.S.C. § 1515(a)(1)(B)). "Although appellees strain to argue that the Electoral College vote certification is not a 'proceeding before the Congress' because it does not involve 'investigations and evidence,' we see no such limit in the ordinary meaning of the word 'proceeding.'" *Id.* (citing Proceeding, Oxford English Dictionary (2d ed. 1989) ("[T]he carrying on of an action or series of actions.")). "Notably," the Circuit continued, "Congress follows statutory directives to complete the certification of the Electoral College vote, including: (1) convening a joint session at 1:00 PM on January 6 in the year following the presidential election; (2) appointing four tellers to read and list the votes; (3) announcement of the voting results by the President of the Senate; and (4) allowing written objections from members of Congress, subject to a procedure for submitting and resolving such objections. Those directives reflect Congress's own intent that the vote certification shall be a 'proceeding before the Congress.'" *Id.* at 343 (citations omitted). As such, this Court should refuse to adopt the defendant's definition of "official proceeding" that is "inapt when interpreting the meaning of a 'proceeding before the Congress.'" *Id.* (quoting 18 U.S.C. § 1515(a)(1)(B)); *see also Puma*, 596 F. Supp. 3d at 97-102 ("The Court concludes that

7

Congress' activities on January 6, 2021, clearly constitute a formal assembly akin to a hearing and thus fall within this definition of an 'official proceeding' before 'the Congress.'").

### C.     "Corruptly" is not unconstitutionally vague

Third, the defendant argues that the term "corruptly," as used in Section 1512(c), is unconstitutionally vague, rendering the statute constitutionally invalid. (ECF 102 at 11-14). As an initial matter, this argument is irrelevant at this stage because count one is properly pled. Recognizing that the court had not agreed upon a definition of "corruptly," Judge Walker in *Fischer* explained that the indictments in that case nonetheless "should be upheld" because "[e]ach contains 'the essential facts constituting the offense charged.' That's because they allege that the Defendants 'corruptly obstruct[ed], influence[d], and impede[d] an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote." *Fischer*, 64 F.4th at 361 (Walker, J., concurring) (quoting Fed. R. Crim. P. 7(c)(1)). So too here: the indictment sufficiently alleges that the Defendants acted corruptly, and the Court should leave the exact definition of that term for another day, when the issue is properly before the Court. *See United States v. Munchel*, No. 1:21-CR-118-RCL, 2023 WL 2992689, at *5 (D.D.C. Apr. 18, 2023) ("First, the 'corruptly' language in the statute is not undefined, vague, or limited to situations where a defendant personally benefited. While the lead opinion and concurring opinion in *Fischer* were at odds regarding the precise bounds of the corrupt mens rea, both agreed that . . . an indictment alleging a corrupt mens rea in the same manner as the one in this case survives a motion to dismiss.") (citing *Fischer*, 64 F. 4th 329).

In any event, the term "corruptly" is not unconstitutionally vague. The Due Process Clauses of the Fifth and Fourteenth Amendments prohibit the government from "depriv[ing] any person of life, liberty, or property, without due process of law." An outgrowth of the Due

8

Process Clause, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).  Notably, the void for vagueness doctrine is narrow.  The challenger must overcome a strong presumption that duly enacted statutes are constitutional.  *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) ("The strong presumptive validity that attaches to an Act of Congress has led this Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.").

Accordingly, the void for vagueness doctrine "does not invalidate every statute which a reviewing court believes could have been drafted with greater precision."  *Rose v. Locke*, 423 U.S. 48, 49 (1975) (per curiam).  Rather, a statute is unconstitutionally vague only if it "proscribe[s] no comprehensible course of conduct at all."  *United States v. Powell*, 423 U.S. 87, 92 (1975).  "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."  *United States v. Williams*, 553 U.S. 285, 306 (2008).  Indeed, district courts here have recognized a high bar for rendering a statute unconstitutionally vague and has advised:

> [N]o void for vagueness challenge is successful merely because a statute requires a person to conform his conduct to an imprecise but comprehensible normative standard, whose satisfaction may vary depending upon whom you ask.  Instead, unconstitutional vagueness arises only if the statute specifies no standard of conduct at all.

*United States v. Gonzalez*, No. 20-cr-40-BAH, 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020) (internal citation and quotation omitted); *see also United States v. Harmon*, No. 19-cr-395-BAH, 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the

"stringent standard" to prevail on a Rule 12 void-for-vagueness motion).  In sum, as this Court has held, "[a] statutory term is not rendered unconstitutionally vague because it does not mean the same thing to all people, all the time, everywhere. . . . Rather, a statute is unconstitutionally vague if, applying the rules for interpreting legal texts, its meaning specifies no standard of conduct . . . at all."  *Puma*, 576 F. Supp. 3d at 103 (quoting *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017)).

Although the D.C. Circuit did not resolve the meaning of the term "corruptly" in *Fischer*, both judges who joined the lead opinion determined that term is not unconstitutionally vague as used in Section 1512(c).  *See Fischer*, 64 F.4th at 339-42 (Pan, J.) (explaining that, under any formulation, "'corrupt' intent exists at least when an obstructive action is independently unlawful," and that "appellees err in arguing that the term 'corruptly' 'takes on unconstitutional vagueness' in circumstances outside the context of a judicial proceeding"); *id.* at 352 (Walker, J.) (explaining that his interpretation of "corruptly" "avoids vagueness").

And this Court has agreed.  "There is little question that violent [unlawful entry and destruction of property] constitute obstructive acts" that are criminal." *Grider*, 585 F. Supp. 3d 21, 32, quoting *Sandlin*, 575 F. Supp. 3d at 29; and *Nordean*, 579 F. Supp. 3d at 52 ("Section 1512(c)(2) is not 'narrow' at all. It sweeps broadly—punishing a host of 'corrupt' conduct. Thus, it hardly lulled Defendant[ ] into a false sense of security ....").  Further, as this Court observed, "judges of this Court have consistently held that "corruptly" requires (1) some degree of specific intent to obstruct and (2) a nexus between the obstruction and the proceeding to be obstructed." Id. at 31.  Citing *McHugh,* 583 F.Supp. 3d at 19-21.  "These constructions support a consensus that Section 1512(c) clearly punishes those who endeavor to obstruct an official proceeding by

acting with a corrupt purpose, or by independently corrupt means, or both." *Puma,* 596 F.Supp. 3d at 103 (cleaned up).  It presents no vagueness concern.

### D. The rule of lenity does not apply

Finally, the D.C. Circuit has rejected the defendant's rule of lenity argument, (ECF 102 at 14-15).  The defendant submits that it is unfair to prosecute him for obstruction of an official proceeding because he was not on fair notice that Congress's Joint Session on January 6 constituted an "official proceeding" under Section 1512(c)(2). The rule of lenity, however, applies "only when a criminal statute contains a 'grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' the Court 'can make no more than a guess as to what Congress intended.'" *Fischer*, 64 F.4th at 350 (quoting *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (1994)). In addressing the same argument from another January 6 defendant, the Circuit concluded, "the language of § 1512(c)(2) is clear and unambiguous.  Restraint and lenity therefore have no place in our analysis." *Id.*

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny the defendant's Motion to Dismiss Count One.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

*/s/ Douglas G. Collyer*
Douglas G. Collyer
Assistant U.S. Attorney (detailed)
N.D.N.Y. Bar No. 519096
14 Durkee Street, Suite 340

11

Plattsburgh, New York 12901
518-314-7800
Douglas.Collyer@usdoj.gov