**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-147 (CKK) |
| v. : | |
| : | |
| CHRISTOPHER SPENCER, : | |
| : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS COUNTS TWO AND THREE OF THE INDICTMENT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Response in Opposition to Defendant's Motion to Dismiss Counts Two and Three of the Indictment. ECF No. 103. As set out in greater detail below, the defendant's motion to dismiss should be denied because: (1) Section 1752 does not require the government to prove that the restricted area was restricted at the Secret Service's direction; (2) the Vice president was temporarily visiting the U.S. Capitol on January 6; (3) Section 1752 is not unconstitutionally vague; and (4) the rule of lenity and the novel construction principle do not apply.

**BACKGROUND**

The defendant, Christopher Spencer, is charged in a five-count Superseding Indictment that was returned on March 10, 2021. The defendant is charged with violating Title 18, United States Code, Sections 1512(c)(2) and 2 (Obstruction of an Official Proceeding and Aiding and Abetting) (Count 1); Title 18, United States Code, Section 1752(a)(1)) (Entering and Remaining in a Restricted Building or Grounds) (Count 2); Title 18, United States Code, Section 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds) (Count Three); Title

1

40, United States Code, Section 5104(e)(2)(D) (Disorderly and Disruptive Conduct in the Capitol Building) (Count Four); and Title 40, United States Code, Section 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building) (Count Five).

These charges stem from the defendant's unlawful conduct at the U.S. Capitol on January 6, 2021. On that date, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. Vice President Pence, who was under United States Secret Service ("USSS") protection, was present at the United States Capitol Building that day. The U.S. Capitol Police ("USCP"), with authority over security on Capitol Grounds, set up security barriers on the restricted area that read, "Area Closed By order of the United States Capitol Police Board." The Lower West Terrace on the West Front was closed to members of the public. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

The defendant and his wife, Jenny Spencer, and minor child were part of the large mob that descended on the Capitol and the restricted grounds that day. The defendant and his wife spent time in the crowd by the inauguration stage on the west side of the U.S. Capitol Building, observing members of the crowd attacking law enforcement repeatedly as they tried to keep the crowd away from the building. They then went up the northern set of stairs underneath the scaffolding to the northwest terrace near the Senate wing of the building.

The defendant, his wife and minor child entered the Senate Wing Door at approximately 2:19 p.m., which had been broken open not long before, with windows that were broken out on either side. They then went into the Crypt where other crowd members again attacked a line of officers trying to hold back the crowd. During this time, the defendant filmed a Facebook live video during which he stated, *inter alia*, "Bro, they just stormed the Capitol. Bro…pushed the cops out of the way, everything…took it over" and "Don't stop!" to rioters as they surged forward.

The defendant, his wife and minor child went through the Crypt and up the stairs to the second floor. There, they went briefly into a hallway of offices belonging to Speaker Pelosi while the defendant livestreamed video in which he said, "Where's Nancy's office?"

The defendant, his wife and minor child crossed through Statuary Hall and joined another crowd in the Statuary Hall Connector outside the House of Representatives who were trying to gain access to the House Chamber, wherein members of Congress were sheltering. During this time, the defendant continued to film a video in which he said, *inter alia*, "Who would've knew (sic) the first time I ever come (sic) would be to storm" and "Kick that motherfucker open!" in reference to the main House Chamber door.

After a time, they went down the hall towards the east side of the building where the defendant continued to film himself saying "What up, Alec? We done (sic) stormed the Capitol building, bro. They done (sic) teared us" and "Smile motherfucker! Smile bitch! Fucking traitor!" to Capitol Police who were then involved in a scuffle with another rioter. The defendant and his wife ultimately exited the Capitol onto the portico outside the House of Representatives on the east side. In sum, the defendant spent just over 30 minutes inside of the Capitol.

Two weeks after the attack on the Capitol, FBI agents interviewed the defendant at his home in North Carolina. The defendant admitted seeing people climbing the walls and

scaffolding outside the Capitol and admitted that he knew these were signs that things were wrong.  The defendant also admitted that police were firing pepper balls at the rioters but rather than leave, the defendant pushed forward to the Capitol, which he admitted entering.  The defendant admitted yelling, but when confronted with his specific statements, he repeatedly deflected and stated that lots of people were yelling things like he was.

In connection with his actions on January 6, 2021, the defendant was arrested on January 19, 2021, and charged with five charges via a criminal complaint. *See* ECF No 1. On March 10, 2021, the defendant was indicted by a federal grand jury. *See* ECF No. 14.

## **LEGAL STANDARD**

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). An indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the Government "has made a *full* proffer of evidence"

or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here.

Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). Criminal cases have no mechanism equivalent to the civil rule for summary judgment. *See e.g.*, *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) ("[M]otions for summary judgment are creatures of civil, not criminal trials"); *Yakou*, 428 F.3d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-CR-40 (BAH), 2020 WL 6342948 at *5 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence). Accordingly, dismissal of a charge does not depend on forecasts of what the Government can prove. Instead, a criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense. *See United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination.

Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *See e.g.*, *United States v. Bingert*, 605 F. Supp. 3d 111, 118 (D.D.C. 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *United States v. McHugh*, No. 21-CR-453 (JDB), 2022 WL 1302880 at *2 (D.D.C. May 2, 2022) (a motion to

dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence); *United States v. Puma*, No. 21-CR-454 (PLF), 2022 WL 823079 at *4 (D.D.C. Mar. 19, 2022) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes") (quoting *United States v. Sunia*, 643 F.Supp. 2d 51, 60 (D.D.C. 2009)).

## ARGUMENT

The defendant's attacks on Counts Two and Three are all without merit.

### I. As Courts Have Uniformly Held, Section 1752 Does Not Require the Government to Prove that the Restricted Area was Restricted at the Secret Service's Direction.

The defendant argues that Counts Two and Three should be dismissed for failure to state an offense because the U.S. Capitol Police, and not the Secret Service, designated the "restricted area" around the U.S. Capitol on January 6, 2021. ECF No. 103 at 5-6. However, nothing in the express language of Section 1752 requires that the U.S. Secret Service designate the "restricted area," and defendant's attempt to read such a requirement as implied in the statutory language goes against the common sense reading of the text and its legislative history, as all the courts in this district to address this issue have held.[1]

Section 1752 provides in relevant part:

(a) Whoever—
   (1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so; [or]
   (2) knowingly, and with intent to impede or disrupt the orderly conduct of

---

[1] *See, e.g.*, *United States v. Griffin*, 549 F. Supp. 3d 49, 52–58 (D.D.C. 2021) (denying motion to dismiss charge of violating 18 U.S.C. § 1752(a)(1)); *United States v. Mostofsky*, 21-CR-138 (JEB), 2021 WL 6049891, at *12–13 (D.D.C. Dec. 21, 2021) (18 U.S.C. § 1752(a)(1)); *United States v. Nordean*, 21-CR-175 (TJK), 2021 WL 6134595, at *18–19 (D.D.C. Dec. 28, 2021) (18 U.S.C. § 1752(a)(1)); *United States v. Andries*, 21-CR-93 (RC), 2022 WL 768684, at *12-16 (D.D.C. Mar. 14, 2022) (18 U.S.C. §§ 1752(a)(1) and (a)(2)); *United States v. Puma*, 21-CR-454 (PLF), 2022 WL 823079, at *13-16 (D.D.C. Mar. 19, 2022) (18 U.S.C. § 1752(a)(1) and (a)(2)); *United States v. Sargent*, No. 21-CR-258 (TFH), 2022 WL 1124817, at *9 (D.D.C. Apr. 14, 2022) *United States v. Bingert*, 605 F. Supp. 3d at 130-132 (18 U.S.C. § 1752(a)(1)).

6

> Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;
> …
>
> (c) In this section—
> (1) [T]he term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—
> (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting;

18 U.S.C. § 1752. Section 1752 also defines "restricted building or grounds" to include any posted, cordoned off, or otherwise restricted area "of the White House or its grounds, or the Vice President's official residence or its grounds" or "of a building or grounds so restricted in conjunction with an event designated as a special event of national significance." 18 U.S.C. §§ 1752(c)(1)(A), (C).

The language of Section 1752 contains no express requirement that the "restricted buildings or grounds" must be restricted by USSS for there to be a violation of Section 1752. To the extent the defendant argues that such a requirement is implicit in the statutory language, the plain language of the statute is clear and unambiguous. Even if one were to look beyond this plain language, the legislative history of Section 1752 also weighs against defendant's interpretation.

First, "absent from the text is any mention of a requirement that any specific entity must restrict or cordon off the area, let alone a requirement that only the Secret Service may be the restricting entity." *Andries*, 2022 WL 768684, at *14 (citation omitted). Section 1752 proscribes certain conduct in and around "any restricted building or grounds," *see* 18 U.S.C. § 1752(a), and it provides three definitions for the term "restricted buildings and grounds," *see* § 1752(c)(1), including "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting,"

7

§ 1752(c)(1)(B). Through a cross-reference, Section 1752 makes clear—and the defendant does not appear to dispute—that "person[s] protected by the Secret Service" include the Vice President. § 1752(c)(2); *see* § 3056(a)(1). The proscribed conduct within a "restricted building or grounds" includes, as relevant here, knowingly and unlawfully entering or remaining, § 1752(a)(1), and knowingly and with intent to impede or disrupt government business, engaging in "disorderly or disruptive conduct" that "in fact, impedes or disrupts" "government business," § 1752(a)(2); and knowingly engaging in any act of physical violence against any person or property, § 1752(a)(4).

In short, Section 1752 "prohibits persons from knowingly entering without lawful authority to do so in any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting." *Wilson v. DNC Servs. Corp.*, 417 F. Supp. 3d 86, 98 (D.D.C. 2019), *aff'd*, 831 F. App'x 513 (D.C. Cir. 2020). Where, as here, the words of the statute are unambiguous, "the judicial inquiry is complete." *See Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation marks omitted). However, under the defendant's interpretation of Section 1752, there is an additional, implied requirement unstated in the statutory language above that any restricted area must be designated by USSS. There is no such requirement, nor is there any credible rationale why one should be inferred.

And while looking beyond the plain language is unwarranted here, *see United States v. American Trucking Associations*, 310 U.S. 534, 543 (1940) (stating that looking beyond clear statutory text is appropriate where the results would be absurd or demonstrably at odds with clearly expressed Congressional intent), the legislative history of Section 1752 in fact affirms the plain reading of the text that the defendant resists. *See Andries,* 2022 WL 768684, at *14 (finding that similar "extra-textual considerations at best do not support [defendant's] reading [of Section 1752] and at worst undermine it"). As the defendant acknowledges, when Section 1752 was first enacted

8

in 1970, USSS was part of the Treasury Department, and this original version of the statute explicitly incorporated regulations promulgated by the Treasury Department governing restricted areas. *See United States v. Bursey*, 416 F.3d 301, 306-07 (4th Cir. 2005) (noting that definition of restricted area required interpreting Treasury regulations). Specifically, subsection (d) of Section 1752 gave authority to the Department of the Treasury, which oversaw USSS, to "prescribe regulations governing ingress or egress to such buildings and grounds and to posted, cordoned off, or otherwise restricted areas where the President is or will be temporarily visiting." Pub. L. 91-644, Title V, Sec. 18, 84 Stat. 1891-92 (Jan. 2, 1971). However, when Congress revised Section 1752 in 2006, it struck subsection (d) from the statute, eliminating the requirement that "restricted building or grounds" be necessarily defined or designated by USSS or any other particular law enforcement agency. Pub. L. 109-177, Title VI, Sec. 602, 120 Stat. 192 (Mar. 9, 2006). In 2012, Congress further reinforced this interpretation by adding the definitional subsection (c) cited above, which provides the current definition of "restricted building or grounds." Pub. L 112-98, Title I, Sec. 2, 126 Stat 263 (March 8, 2012). Contrary to the defendant's reading, the legislative history shows that Congress deliberately excised any requirement that a restricted area depend on any definition or determination by USSS.

Both the plain language and legislative history of Section 1752 show that there is no requirement, express or implied, that an area be restricted by a particular law enforcement agency, as courts in this district have unanimously held. *See United States v. Grider*, --- F.Supp.3d ---, 2022 WL 3016775, at *7 (D.D.C. July 29, 2022) (collecting cases) (internal quotations omitted) ("[N]othing in the statutory text requires the Secret Service to be the entity to restrict or cordon off a particular area"); *Bingert*, 605 F. Supp.3d at 131 ("[D]efendants fashion a bizarre requirement, seemingly out of thin air: that only the Secret Service can designate an area as restricted [for the

purposes of 18 U.S.C. § 1752]."); *United States v. Rhine*, No. 21-CR-687 (RC), 2023 WL 372044, at *11 (D.D.C. Jan. 24, 2023). The defendant's contention that these counts of the indictment are defective for this reason should be likewise rejected.

## II. The Vice President can "Temporarily Visit" the U.S. Capitol

The defendant's argument that a Vice President cannot "temporarily visit" the U.S. Capitol Building—because he or she has an office there—is contrary to Section 1752's plain terms, purpose, and structure. The same argument has been rejected by every Judge in this District to have considered the defendant's "strained reading of this fairly straightforward phrase."[2] *United States v. Williams*, No. 21-cr-377 (BAH), ECF No. 88 at 5-7. As the Court has explained, "[c]ommon sense easily resolves this debate." *Id.* at 5. The defendant's "strained interpretation is inconsistent with both the text and the structure of the statute . . . This definition [of 'temporarily visiting'] obviously encompasses Vice President Pence's actions on January 6, 2021. He went to the Capitol with a discrete purpose: to certify the Electoral College votes, a process that by law is contemplated to take one day." *See United States v Williams*, No. 21-cr-168 (ABJ), 2022 WL 2237301, at *19 (D.D.C. June 22, 2022) (citing 3 U.S.C. § 15); *McHugh*, 583 F. Supp. 3d at 33-34 (reaching "a commonsense conclusion: the Vice President was 'temporarily visiting' the Capitol"); *see also United States v. Andries*, No. 21-cr-93 (RC), 2022 WL 768684, at *16 (D.D.C.

---

[2] *See, e.g., United States v. Williams*, No. 21-cr-377 (BAH), ECF No. 88 at 5-7; *United States v. Griffin*, 549 F. Supp. 3d 49, 52-58 (D.D.C. 2021) (18 U.S.C. § 1752(a)(1)); *United States v. Mostofsky*, No. 21-cr-138 (JEB), 2021 WL 6049891, at *8-*13 (D.D.C. Dec. 21, 2021) (18 U.S.C.§ 1752(a)(1)); *United States v. Nordean*, No. 21-cr-175 (TJK), 2021 WL 6134595, at *4-*12, *14-*19 (D.D.C. Dec. 28, 2021) (18 U.S.C. § 1752(a)(1); 2)); *United States v. Andries*, No. 21-cr-93 (RC), 2022 WL 768684, at *3-*17 (D.D.C. Mar. 14, 2022) (18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2)); *United States v. Puma*, No. 21-cr-454 (PLF), 2022 WL 823079, at *4-*19 (D.D.C. Mar. 19, 2022) (18 U.S.C. § 1752(a)(1); 18 U.S.C. § 1752(a)(2)); *United States v. Bingert*, No. 21-cr-91 (RCL), 2022 WL 1659163, at *3-*11, *12-*15 (D.D.C. May 25, 2022) (18 U.S.C. § 1752(a)(1)).

Mar. 14, 2022) ("Vice President Pence was 'temporarily visiting' the Capitol on January 6, 2021 if he went to the Capitol for a particular purpose, including a business purpose, and for a limited time only. Plainly he did. He went to the Capitol for the business purpose of carrying out his constitutionally assigned role in the electoral count proceeding; he intended to and did stay there only for a limited time."); *United States v. Puma*, No. 21-cr-454 (PLF), 2022 WL 823079, at *17 (D.D.C. Mar. 19, 2022) (stating that under the plain language of Section 1752, the Vice President "was temporarily visiting the Capitol on January 6, 2021: he was there for a limited time only in order to preside over and participate in the Electoral College vote certification.").

    To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). The verb "visit" means, inter alia, "to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come officially to inspect or oversee."[3] Either definition describes the Secret Service protectee's activities on January 6. Vice President Pence was physically present at the U.S. Capitol for a particular purpose: he presided over Congress's certification of the 2020 Presidential Election, first in the joint session, and then in the Senate chamber. While not specifically alleged in the indictment, two other Secret Service protectees (members of the Vice President's immediate family) also came to the U.S. Capitol that day for a particular purpose: to observe these proceedings. Furthermore, as President of the Senate, Vice President Pence oversaw the vote certification. Given the presence of the Vice President (and his family members), the U.S. Capitol plainly qualified as a building where "[a] person protected by the Secret Service [was] … temporarily visiting." 18 U.S.C. § 1752(c)(1)(B).

---

[3] https://www.merriam-webster.com/dictionary/visit.

The defendant criticizes Section 1752's use of the terms "temporarily" and "restricted area," arguing those terms allow the Section 1752's reach to "expand[] and contract[] based on fluid, unidentified factors . . . [and] provides no parameters by which the ordinary person can discern when the Vice President is 'temporarily visiting' the Capitol and, in turn, know when the building is 'restricted' for purposes of § 1752(a)(1)." ECF No. 103 at 10. He also argues that the *McHugh* decision adopting the government's position—that Vice President Pence was "temporarily visiting" the Capitol Building on January 6, 2021—was based on "faulty reasoning" because it "rejected the ordinary person's understanding of what 'temporarily visiting' means when it comes to the Vice President[.]" ECF No. 103 at 12.

However, these conclusory arguments ignore the reality of January 6, 2021: Vice President Pence's visit to the U.S. Capitol was temporary because he (and his family) traveled there to preside over the Joint Session of Congress—a proceeding of limited duration; at the close of the proceeding, they left, thus confirming the "temporary" nature of their visit. The defendant was among the rioters who breached the Capitol building, thereby delaying the very proceeding the Vice President visited the Capitol to oversee on January 6. *See generally U.S. v. Spencer*, 21-cr-147 (CKK), ECF No. 1.

The defendant further argues that "the Vice President has a dedicated, permanent office reserved for their use in the Senate" and he therefore cannot temporarily visit his own office. ECF No. 103 at 3-4. But numerous judges have "rejected this exercise in wordsmithing," *Williams*, No. 21- cr-377 (BAH), ECF No. 88 at 5, and for good reason: Section 1752(c)(1)(B) defines the restricted area by reference to the location of the protectee—not his home or workplace. When Vice President Pence traveled to the U.S. Capitol on January 6 to oversee the Joint Session of Congress, he was "visiting" the building. And because Vice President Pence intended to leave at

12

the close of the session, this visit was "temporar[y]." Moreover, the United States Capitol is not the Vice President's regular workplace; even if "there is some carveout in § 1752 for where a protectee normally lives or works, it does not apply to Vice President Pence's trip to the Capitol on January 6, 2021." *See, e.g., McHugh*, 583 F. Supp. 3d at 33-34 (citing various dictionary definitions of "temporary" as "for a limited time" and finding that the Vice President can "temporarily visit" the U.S. Capitol); *Williams*, 2022 WL 2237301, at *20 (emphasis in original) ("Defendant insists that the Vice President could not have been 'temporarily visiting' the Capitol on January 6th because he regularly works there, and because he was in fact working there on January 6th. But defendant's simplistic assertion ignores not only the ordinary meaning of the statutory language, but also the structure of the definition in question . . . The language in 18 U.S.C. § 1752(a)(1) and (2) is plain and unambiguous: the term 'restricted building or grounds' encompasses the United States Capitol, which the Vice President) was 'temporarily visiting' on January 6, 2021.") (citations omitted).

As Judge Howell has explained, "even if the words 'temporarily visiting' were at all ambiguous—a view at odds with a plain reading of the words—the structure of the statute makes clear that defendant's preferred reading would produce absurd results." *Williams*, No. 21-cr-377 (BAH), ECF No. 88 at 6. Such a "carveout," taken to its logical end, would undermine the government's ability to protect the President and Vice President by deterring and punishing individuals who seek unauthorized access to the President's or Vice President's location. It would restrict Section 1752(c)(1)(B)'s application to only locations outside the District of Columbia— on the view that any visit by the President or Vice President to a location within municipal limits cannot be "temporary" because they reside in the District of Columbia. It would provide more protection for Secret Service protectees in an airplane hangar or a park than in the Capitol Building.

In addition, under the defendant's construction, Section 1752(c)(1)(B) would not apply where the current President or Vice President temporarily stayed at their permanent residences in Delaware or California—on the view that such a trip would not qualify as "visiting." Nor would it apply to Camp David, where there is a presidential cabin and office. In another strange scenario, a restricted area could exist when, as here, the Vice President's family visits the Capitol (because they are Secret Service protectees without an office there), but not when the Vice President herself does. It therefore would afford a higher level of protection for the family of the elected official than to the elected official herself. No support exists for creating such large and irrational exceptions to the statute's sweep. *See Lovitky v. Trump*, 949 F.3d 753, 760 (D.C. Cir. 2020) (noting that courts will avoid a "statutory outcome … if it defies rationality by rendering a statute nonsensical or superfluous or if it creates an outcome so contrary to perceived social values that Congress could not have intended it") (citation omitted).

The defendant's position also defies Section 1752's clear purpose. *Cf. Genus Med. Techs. LLC v. United States Food & Drug Admin.*, 994 F.3d 631, 637 (D.C. Cir. 2021) ("[I]f the text alone is insufficient to end the inquiry, we may turn to other customary statutory interpretation tools, including structure, purpose, and legislative history.") (internal quotation marks and citation omitted). In enacting Section 1752, Congress sought to protect "not merely the safety of one man, but also the ability of the executive branch to function in an orderly fashion and the capacity of the United States to respond to threats and crises affecting the entire free world." *United States v. Caputo*, 201 F. Supp. 3d 65, 70 (D.D.C. 2016) (quoting *White House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1528 (D.C. Cir. 1984)). To that end, the statute comprehensively deters and punishes individuals who seek unauthorized access to the White House grounds and the Vice President's residence—fixed locations where the President and Vice President live and work, 18

U.S.C. § 1752(c)(1)(A); and also any other "building or grounds" where they (or other protectees) happen to be "temporarily visiting," 18 U.S.C. 1752(c)(1)(B). Construing the statutory provisions together, Section 1752(c)(1)(A) and (c)(1)(B) protect the President and Vice President in their official homes and wherever else they go. Interpreting the statute as the defendant suggests would create a gap in Section 1752's coverage by removing areas, such as the U.S. Capitol, from protection. It could endanger the leaders of the Executive Branch even as they perform their official duties. That gap is both illogical and contrary to the statutory history of Section 1752, where, "at every turn," Congress has "broadened the scope of the statute and the potential for liability." *United States v. Griffin*, 549 F. Supp. 3d 49, 56 (D.D.C. 2021) (emphasis in original).

The cases cited by the defendant—which involve either an arrest or conviction under Section 1752 at a place other than the U.S. Capitol Building—do not discuss the "temporarily visiting" language. *See* ECF No. 103 at 9 (citing *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005); *United States v. Junot*, 1990 WL 66533 (9th Cir. May 18, 1990) (unpublished). But "the fact that those situations clearly qualify does not mean that the relevant situation on January 6 cannot count as well." *Williams*, No. 21-cr-377 (BAH), ECF No. 88 at 6. All the relevant considerations—plain language, statutory structure, and congressional purpose—foreclose the defendant's crabbed reading of Section 1752(c)(1)(B). Therefore, this Court should reject it.

### III.    Section 1752 is Not Unconstitutionally Vague.

The defendant also raises various vagueness challenges to Section 1752(a)(2), all of which fail. As the defendant fails to acknowledge, Judges Friedman, Bates, Kelly, McFadden, and Cooper have all rejected vagueness challenges to 18 U.S.C. 1752(a)(1) and (a)(2). *Grider*, 2022 WL 3016775, at *7; *Puma*, 2022 WL 823079, at *3 ("This Court concludes that … 18 U.S.C. § 1752 [is] not unconstitutionally vague.") (Friedman, J.); *Bozell*, 2022 WL 474144, at

15

\*9 ("§ 1752 "is clear[,] gives fair notice of the conduct it punishes, and [does not] invite arbitrary enforcement."); *United States v. Nordean*, 579 F. Supp. 3d 28, 60 (D.D.C. 2021) (§ 1752(a)(1) and (a)(2) are "not unconstitutionally vague"); *Griffin*, 549 F. Supp. 3d at 57 ("This law is no trap awaiting the unwary."); *United States v. Caputo*, 201 F. Supp. 3d 65, 72 (D.D.C. 2016) ("18 U.S.C. § 1752(a)(1) is … not void for vagueness.") (Cooper, J.)

First, the defendant argues that the straightforward interpretation described above is unconstitutionally vague because the statute fails to provide no notice that crossing a barrier erected by an entity other than the Secret Service is criminal. A statue is vague where it (1) fails to give ordinary people fair notice of the conduct it punishes or (2) is so standardless that it invites arbitrary enforcement. *Johnson v. United States*, 576 U.S. 591, 595 (2015). Neither applies to Section 1752. As set out above, Section 1752 prohibits the defendant from knowingly engaging in certain conduct in "any posted, cordoned off, or otherwise restricted area, of … grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(a), (c)(1)(B).  As explained above, the statute is not vague: rather, it clearly does not require that the Secret Service restrict the area.  The defendant's apparent mistake of law about an interpretation of the statute contrary to its plain text does not make the statute vague. *See United States v. Neely*, No. CR 21-642 (JDB), 2023 WL 1778198, at \*4 (D.D.C. Feb. 6, 2023) (rejecting identical argument and observing, "there is no reasonable divergence of opinion"). As Judge McFadden held in *United States v. Griffin*, "[1752] does not invite arbitrary enforcement by criminalizing common activities or giving law enforcement undue discretion." 549 F. Supp. 3d 49,

57 (D.D.C. 2021). Therefore, Section 1752 is not unconstitutionally vague as to the identity of the restricting party.[4]

The defendant also attacks the charges brought under Section 1752(a)(2), as unconstitutionally vague because "'within such proximity to any restricted building or grounds' provides no clear limit on where exactly the statute applies." ECF No. 103 at 16. But the defendant ignores the explicit language of the Indictment, which alleges that the defendant entered and remained "*in* a restricted building and grounds" (Count 2) and that defendant engaged in disorderly and disruptive conduct "*in* and within such proximity to" restricted grounds (Count 3). ECF No. 14 (emphasis added). Thus, the Indictment alleges that the defendant was not just "within such proximity" to a restricted area but was in fact *within* a restricted area. "So whatever 'fuzzy boundary standard[]' that phrase may introduce is irrelevant here." *Nordean*, 579 F. Supp.3d at 60, n.16.[5] *See also*, *United States v. Griffith*, No. 21-CR-244, 2023 WL 1778192, at *3 (D.D.C. Feb. 6, 2023); *United States v. Egtvedt,* 21-CR-177, Dkt. Entry 93 at 13, n.2.

---

[4] The defendant's unsupported claim that the statute is vague because the government "had never prosecuted a violation of that statute with the allegation that the accused entered an area restricted by some government agency other than the USSS" (Mot. at 16) is wrong.  "Discretionary prosecutorial decisions cannot render vague as applied a statute that by its plain terms provides fair notice." *United States v. Caldwell*, 21-cr-28 (APM), 2021 WL 6062718, at *8 (D.D.C. Dec. 20, 2021); see also *United States v. Montgomery,* 21-cr-46 (RDM), 2021 WL 6134591, at *22 (D.D.C. Dec. 28, 2021) ("the presence of enforcement discretion alone does not render a statutory scheme unconstitutionally vague") (quoting *Kincaid v. District of Columbia*, 854 F.3d 721, 729 (D.C. Cir. 2017) (Kavanaugh, J.)).  The vagueness doctrine is directed at the notice that the statute itself provides, not the government's enforcement decisions.

[5] While the Court should reject the vagueness claim based solely on the statute and the indictment, the government expects that the facts at trial will show that the defendant was within the restricted area, and so would clearly be on notice that his conduct violated the statute, regardless of their quibble with the "proximity" provision. "A [defendant] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applies to the conduct of others." *Nordean*, 579 F. Supp. 3d 28, at 57 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010) (cleaned up).

Judge Bates' decision rejecting the same vagueness challenge in *Neely* is instructive. As in *Griffith* and *Egtvedt,* Judge Bates first pointed out that the indictment alleged that the defendant was "in" the restricted area, not merely in proximity to it. *Neely*, 2023 WL 1778198, at *4. Moreover, Judge Bates found, the boundary-based vagueness argument failed because it did not "grapple with the mens rea element of the statute, which requires him to have acted 'knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions.'" *Id.* at *5 (citing *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982) ("[A] scienter requirement may mitigate a law's vagueness ....").  Like Neely, the defendant "[does] not argue that description of the conduct regulated—disorderly conduct that disrupts government business—is vague." For this additional reason, the defendant's motion fails.

### IV.    The Rules of Lenity and the Novel Construction Principle Do Not Apply.

As every other court to address this issue has concluded, the language of Section 1752(a) is unambiguous. Therefore, the Court need not resort to the rules of lenity and the novel construction principle. As Judge McFadden explained last year when rejecting nearly identical arguments that the rules of lenity and constitutional avoidance should apply as a result of Section 1752's purported ambiguity,

> [Defendant] invokes the doctrine of lenity and the "novel construction principle." Neither applies. Lenity is "a sort of junior version of the vagueness doctrine." It comes into frame only when a court has exhausted all canons of statutory construction and is left with only a coin flip to resolve "grievous ambiguity."
>
> As the Court has explained, Section 1752 is capacious, not ambiguous. [Defendant's] "ability to articulat[e] a narrower construction" of the statute does not trigger lenity. Nor has there been an "unforeseen judicial enlargement" of a longstanding criminal statute so that it operates like an ex post facto law. [Defendant] has allegedly violated a rarely charged statute, but that does not mean the *construction* of the statute unfairly blindsided him. There was no prevailing practice of courts foregoing or rejecting the interpretation that the Government now advances.

*Griffin*, 549 F. Supp. 3d at 57-58 (citations omitted).

Judges of this district have rejected attempts to cast Section 1752 as "ambiguous." "§ 1752 'is clear[,] gives fair notice of the conduct it punishes, and [does not] invite arbitrary enforcement.'" *United States v. Bozell*, No. 21-CR-216 (JDB), 2022 WL 474144, at *9 (D.D.C. Feb. 16, 2022) (citing *United States v. Nordean*, No. 21-cr-175 (TJK), 2021 WL 6134595, at *19 (D.D.C. Dec. 28, 2021)); *Griffin*, 549 F. Supp. 3d at 57 ("this law is no trap awaiting the unwary.")).

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the defendant's motion to dismiss Counts Two and Three be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

*/s/ Douglas G. Collyer*
Douglas G. Collyer
Assistant U.S. Attorney (detailed)
N.D.N.Y. Bar No. 519096
14 Durkee Street, Suite 340
Plattsburgh, New York 12901
518-314-7800
Douglas.Collyer@usdoj.gov