UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

CHRISTOPHER SPENCER,

Defendant.

Criminal No. 21-cr-147-1 (CKK)

MEMORANDUM OPINION
(October 13, 2023)

For his actions as a member of the riot at the United States Capitol on January 6, 2021, Defendant Christopher Spencer was charged by indictment with five counts, including felony counts.  *See* [14] Indictment.  Defendant has indicated that he will not be accepting a plea offer but will be proceeding to trial.  Pursuant to the deadlines set forth in the [101] Pretrial Scheduling Order, Defendant filed the pending [102] Motion to Dismiss Count One of the Indictment and [103] Motion to Dismiss Counts Two and Three of the Indictment.

Upon consideration of the briefing,[1] the relevant legal authorities, and the entire record, the Court **DENIES** Defendant's [102] Motion to Dismiss Count One and [103] Motion to Dismiss Counts Two and Three.

---

[1] The Court's consideration has focused on the following: Complaint, ECF No. 1 ("Compl."); Indictment, ECF No. 14 ("Indictment"); Defendant's Motion to Dismiss Count One, ECF No. 102 (Def.'s Mot. on I"); United States' Opposition, ECF No. 42 ("Gov.'s Opp'n on I"); Defendant's Motion to Dismiss Counts Two and Three, ECF No. 103 ("Def.'s Mot. on II, III"); United States' Opposition, EC No. 105 ("Gov.'s Opp'n on II, III").  In an exercise of its discretion, the Court has concluded that oral argument would not be helpful in the resolution of the Motion.

1

# I. BACKGROUND

## A. Charged Offenses

Defendant Christopher Spencer is charged by indictment with: (1) Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2; (2) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); (3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); (4) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (5) Parading, Demonstrating, or Picketing in any of the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(G).

## B. Certification of the 2020 Presidential Election and Capitol Riot

The Twelfth Amendment of the United States Constitution provides that, after the members of the Electoral College "meet in their respective states and vote by ballot for President and Vice-President," they "shall sign and certify [their votes], and transmit [them] sealed to the seat of government of the United States, directed to the President of the Senate." U.S. Const. amend. XII. The Vice President of the United States, as President of the Senate, must then, "in the presence of the Senate and House of Representatives, open all the certificates[,] and the votes shall then be counted." *Id.* To count the votes and "declar[e] the result" of the Electoral College, federal law mandates that "Congress shall be in session on the sixth day of January succeeding every meeting of the electors" and that "[t]he Senate and House of Representatives shall meet in the Hall of the House at the hour of 1 o'clock in the afternoon on that day." 3 U.S.C. §§ 15-16.

According to the Government's Complaint, pursuant to the Constitution and federal law, Congress convened in a joint session on 1:00 PM on January 6, 2021, to count the votes of the Electoral College and certify the results of the 2020 Presidential Election that had taken place on November 3, 2020. *See* Compl. at 2. With then-Vice President Michael R. Pence presiding, proceedings began and continued until 1:30 PM, when the United States House of Representatives and the United States Senate adjourned to separate chambers within the Capitol to debate and consider an objection to the Electoral College vote from the State of Arizona. *Id.* Vice President Pence continued to preside in the Senate chamber. *Id.*

Shortly before noon, then-President Donald J. Trump took the stage at a rally of his supporters staged just south of the White House. *Trump v. Thompson*, 20 F.4th 10, 17 (D.C. Cir. 2021). Then-President Trump declared that the election was "rigged" and "stolen," and urged the crowd to "demand that Congress do the right thing and only count the electors who have been lawfully slated." *Id.* at 18 (cleaned up). During and after then-President Trump's speech, a mass of attendees marched on the Capitol. *See id.*

As they gathered outside the Capitol, the crowd faced temporary and permanent barricades and Capitol Police positioned to prevent unauthorized entry to the Capitol. Compl. at 2. Around 2:00 p.m., "individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts." *Id.* These violent acts caused members of the Senate and House of Representatives to evacuate the chambers of the Capitol and suspend the certification process of the presidential election results. *Id.*

The violent riot "desecrated [the Capitol], blood was shed, and several individuals lost their lives." *Thompson*, 20 F.4th at 19.  All told, "[t]he events of January 6, 2021 marked the most significant assault on the Capitol since the War of 1812." *Id.* at 18–19 (footnote omitted).

### C. Events Specific to Defendant

According to the Complaint, Defendant Christopher Spencer was present inside various areas of the Capitol Building on January 6, 2021.  In the Capitol Crypt, Defendant posted a Facebook livestream of himself yelling "Wooh! We in this motherf*cker!" and then saying ""Bro, they stormed the Capitol, bro… pushed the cops out of the way, everything… took it over." Compl. at 2–3.  Defendant then rushed forward into the building and, along with the crowd, began chanting "Who's House? Our house!" and "Stop the steal!" *Id.* at 3.

Defendant also entered into the wing where then-Speaker of the House Nancy Pelosi's offices are located.  *Id.* at 4.  As he walked into the office hallway, he is heard saying on his Facebook livestream, "Where's Nancy's office?" *Id.*

U.S. Capitol surveillance video also captures Defendant Spencer inside Statuary Hall, where he said, "Who would've knew the first time I ever come would be to storm." *Id.* at 4–5.  Defendant then moves towards the entry doors to the House of Representatives where a crowd is gathered chanting, "Stop the steal. Stop the steal." *Id.* at 5.  He appears to yell "kick that motherfucker open!" as others are shouting "push" and attempting to push through the closed door.  *Id.*

Defendant is also seen gathered in a hallway, with others heard taunting and

yelling vulgarities at police officers; they are called "f*cking traitor," "pig," and "fascist." *Id.* As captured on his phone, Defendant turns his camera and said "What up Alec? We done stormed the Capitol building, bro. They done teared us." *Id.* When the crowd begins pushing furniture down the hallway toward the police officers, Defendant yells "Smile motherf*cker! Smile b*tch! F*cking traitor!" *Id.*

### D. Procedural History

On January 18, 2021, the Government filed its criminal complaint. *See generally* Compl. Defendant first appeared before Magistrate Judge Zia M. Faruqui on January 25, 2021. *See* Minute Entry, Jan. 25, 2021. The Government filed an Information on February 23, 2021, *see* Information, ECF No. 9, and an Indictment on March 10, 2021, *see* Indictment. Defendant pleaded "not guilty" to the charges in the Indictment. *See* Minute Order, March 31, 2021. Defendant is released on personal recognizance.

During a status hearing on August 1, 2023, Defendant Spencer indicated that he would not be accepting a plea offer at this time and instead wants to proceed to trial. The Court soon thereafter issued a [101] Pretrial Scheduling Order setting deadlines for various pretrial motions. Defendant filed the pending [102] Motion to Dismiss Count One of the Indictment; the Government filed the [104] Opposition. Defendant also filed the pending [103] Motion to Dismiss Counts Two and Three of the Indictment; the Government filed the [105] Opposition. Defendant did not file a reply brief in support of either his [102] or [103] Motion. The Court now turns to resolution of these two motions.

## II. DISCUSSION

### A. Count One of the Indictment

Defendant Spencer moves to dismiss Count One of the Indictment, which charges him with obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2) & 2. He raises three arguments: first, that the conduct he has been accused of committing cannot qualify as conduct that "otherwise obstructs, influences, or impedes" an official proceeding within the meaning of § 1512(c)(2); second, that § 1512(c)(2) does not prohibit the obstruction of the electoral college vote; and third, that § 1512(c)(2) is unconstitutionally vague in that "corruptly" is undefined and itself vague. *See* Def.'s Mot. on I at 1. The United States Court of Appeals for the District of Columbia Circuit has rejected each of these arguments in its recent opinion, *United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023). The Court will therefore **DENY** Defendant Spencer's [102] Motion, as will be explained further below.

> **1. Conduct That "Otherwise Obstructs, Influences, or Impedes" an Official Proceeding Within the Meaning of § 1512(c)(2) Includes Defendant's Actions**

Defendant argues that Count One fails to allege an *actus reus* that falls within 18 U.S.C. § 1512(c)(2). Def.'s Mot. on I at 2. He continues that "for Count One to sufficiently allege a violation, it must allege that Mr. Spencer took some action with respect to a document, record, or other object in order to corruptly obstruct, impede, or influence an official proceeding," which it does not. *Id.* at 6.

However, the D.C. Circuit rejected this interpretation in *Fischer*. That court instead held that Section 1512(c)(2) "encompasses all forms of obstructive conduct,

including… efforts to stop Congress from certifying the results of the 2020 presidential election." *Fischer*, 64 F.4th at 335.  The court concluded that, "[u]nder the most natural reading of the statute, § 1512(c)(2) applies to all forms of corrupt obstruction of an official proceeding, other than the conduct that is already covered by § 1512(c)(1)." *Id.* at 336 (concluding that this "broad interpretation of the statute—encompassing all forms of obstructive acts—is unambiguous and natural, as confirmed by the 'ordinary, contemporary, common meaning' of the provision's text and structure") (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

In light of the D.C. Circuit's conclusion that Section 1512(c)(2) "applies to all forms of corrupt obstruction of an official proceeding" other than conduct covered under Section 1512(c)(1), *Fischer*, 64 F.4th at 336, the Court rejects Defendant's arguments to the contrary, just as numerous other courts have done since the *Fischer* decision.  *See, e.g.*, *United States v. Bennett*, No. 21-312 (JEB), 2023 WL 6460026, at *3 (D.D.C. Oct. 4, 2023) (stating that "*Fischer* forecloses such a position"); *United States v. Connell*, No. 21-0084 (PLF), 2023 WL 4314903, at *4 (D.D.C. July 3, 2023); *United States v. Mock*, No. 21-444 (JEB), 2023 WL 3844604, at *3 (D.D.C. June 6, 2023) (Defendant acknowledges that "in light of the D.C. Circuit's binding decision in [*Fischer*], this ground is not tenable").

### 2.  § 1512(c)(2) Prohibits Obstruction of the Electoral College Vote

Defendant next argues that 18 U.S.C. § 1512(c)(2) prohibits obstructing only "official proceedings," which are tribunal-like proceedings relating to the administration of justice and does not encompass the electoral college vote.  Def.'s Mot. on I at 6–7.

7

Again, the D.C. Circuit also rejected this interpretation in *Fischer*. That court expressly stated that "[t]he statutory definition of 'official proceeding' under § 1512(c)(2)… includes a 'proceeding before the Congress'" including the certification of the electoral college vote. *Fischer*, 64 F.4th at 342–43. The Court also notes that *this* Court has found the same prior to the *Fischer* decision. *See United States v. Grider*, 585 F. Supp. 3d 21, 28–29 (D.D.C. 2022) (CKK) ("the Joint Session of Congress to certify the Electoral College is unambiguously an 'official proceeding' within the meaning of 1512(c)(2)").

Accordingly, the Court rejects Defendant's definition of the term "official proceeding" in Section 1512(c)(2), just as other courts have done since *Fischer*. *See, e.g.*, *Connell*, 2023 WL 4314903, at *4; *Mock*, 2023 WL 3844604, at *4.

### 3. "Corruptly" in § 1512(c)(2) is not Vague

Finally, Defendant argues that § 1512(c)(2) "as applied to Congressional proceedings fails to provide constitutionally required notice of what the statute prohibits, because the contextual meaning of 'corruptly' is vague." Def.'s Mot. on I at 11. Defendant argues that, as a result, the statutory provision is constitutionally invalid. *See id.* at 11–14.

The Court again looks to the D.C. Circuit's opinion in *Fischer*. The court decided that case 2-1, with Judge Florence Y. Pan writing the lead opinion and Judge Justin R. Walker writing a concurrence, in which he explained his interpretation of the term "corruptly." Importantly, while Judge Pan and Judge Walker disagreed on the precise definition of the term "corruptly," neither judge found it overly vague. *See Fischer*, 64

F.4th at 336–42; *see also Mock*, 2023 WL 3844604, at *4; *Connell*, 2023 WL 4314903, at *5–6; *Bennett*, 2023 WL 6460026, at *3.  To put it more clearly, "a two-judge majority of the D.C. Circuit panel concluded that [Defendant's] kind of conduct is within the meaning of the word 'corruptly' under Section 1512(c)(2), and the D.C. Circuit upheld indictments charging such conduct." *Connell*, 2023 WL 4314903, at *6.

The Court therefore rejects Defendant's argument that the term "corruptly" is vague such that § 1512(c)(2) is rendered unconstitutional.

### 4. Rule of Lenity Does Not Apply

Defendant's last contention is that the Court should invoke the rule of lenity and dismiss Count One due to the ambiguity of § 1512(c)(2).  Def.'s Mot. on I at 14–15.

However, because the language of Section 1512(c)(2) is clear and unambiguous, the rule of lenity is inapplicable here, which *Fischer* again made clear.  *See Fischer*, 64 F.4th at 350 ("The rule [of lenity] thus 'applies only when a criminal statute contains a grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived, the Court can make no more than a guess as to what Congress intended.'" (internal quotation marks omitted) (quoting *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016))).  Defendant's argument therefore fails.

\*   \*   \*

For the reasons stated above, the Court **DENIES** Defendant's [102] Motion to Dismiss Count One.

### B. Counts Two and Three of the Indictment

Defendant Spencer also moves to dismiss Counts Two and Three of the

9

Indictment, which charge him with violations of 18 U.S.C. § 1752(a)(1) and (a)(2).  He raises the following arguments: first, that these counts fail to state an offense because the "United States Capitol and its grounds" could not constitute "restricted buildings or grounds" under § 1752; and second, that Count Three should be dismissed because § 1752(a)(2) is unconstitutionally vague and overbroad.  For the reasons that follow, the Court will **DENY** Defendant Spencer's [103] Motion to Dismiss Counts Two and Three.

1. **"Restricted Buildings or Grounds" Under § 1752**

Defendant argues that Counts Two and Three should be dismissed for failure to state an offense because the United States Capitol and its grounds are not a "restricted buildings or grounds" under § 1752.  Section 1752 bars certain unlawful conduct in "restricted buildings or grounds."  The statute defines these areas as, in relevant part, "a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting" or "a building or grounds so restricted in conjunction with an event designated as a special event of national significance."  18 U.S.C. § 1752(c)(1)(B)–(C).  Defendant makes two key arguments for dismissal of these counts: first, that that the United States Secret Service did not restrict the Capitol Building and its grounds in relation to the Vice President's presence there on January 6, Def.'s Mot. on II, III at 5–6, and second, that the Vice President was not "temporarily visiting" the location, *id.* at 6–15.  The Court will address these two arguments in turn.

   a. **Designating an Area as Restricted**

Defendant argues that the United States Secret Service ("Secret Service"), and the Secret Service only, must first designate an area "restricted" before conduct in that area is

unlawful for the purposes of §1752. Def.'s Mot. at 5–6. He contensd that because here, the Secret Service did not restrict the entire Capitol Building and its grounds, Defendant cannot be prosecuted under this provision. *Id.*

As an initial matter, Defendant's argument rests on the mistaken factual premise that the Secret Service did not designate any area as "restricted" in advance of Vice President Pence's visit to the United States Capitol on January 6, 2021. To the contrary. As this Court previously found, crediting the testimony of Secret Service Inspector Lanelle Hawa, "[i]n partnership with the Capitol Police, the United States Secret Service [] set up a protective perimeter around the entire grounds of the United States Capitol." *United States v. Rivera*, 670 F. Supp. 3d 1, 4 (D.D.C. 2022) (CKK). Regardless, nothing in the statutory text requires "the Secret Service to be the entity to restrict or cordon off a particular area." *United States v. Mostofsky*, 579 F. Supp. 3d 9, 28 (D.D.C. 2021) (JEB).

Accordingly, Defendant's argument here is unavailing.

### b. "Temporarily Visiting"

Defendant next argues that the Capitol and/or its grounds must have been a place that the Vice President was "temporarily visiting" when presiding over the opening, counting, and certification of electoral votes, but that Vice President Pence was not doing so, and was instead "simply at work that day." Def.'s Mot. on II, III at 6–7.

As the Government puts it, "[t]he same argument has been rejected by every Judge in this District to have considered the defendant's 'strained reading of this fairly straightforward phrase.'" Gov.'s Opp'n on II, III at 10 (citing *United States v. Williams*,

No. 21-cr-377 (BAH), ECF No. 88 at 5–7).[2]

Accordingly, Defendant Spencer's argument is likewise unconvincing, and the Court finds that Defendant has failed to show that Counts Two and Three should be dismissed on these grounds.

### 2. § 1752(a)(2) is not Unconstitutionally Vague and Overbroad

Defendant next argues that Count Three should be dismissed because §1752(a)(2) is unconstitutionally vague and overbroad. He argues generally that "Section 1752(a)(2) contains vague and imprecise terms and phrases that fail to provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited and invite arbitrary law enforcement." Def.'s Mot. on II, III at 16. He then points to phrases in the statutory provision "impede or disrupt the orderly conduct of Government business or official functions," and "within such proximity to any restricted building or grounds." *Id.*

The Government points out that in addition to this Court, Judges Paul L. Friedman, John D. Bates, Timothy J. Kelly, Trevor N. McFadden, and Christopher R. Cooper have all rejected vagueness challenges to 18 U.S.C. § 1752(a)(1) and (a)(2). *See* Gov.'s Opp'n on II, III at 15 (citing *United States v. Grider*, 617 F. Supp. 3d 42, 53–54

---

[2] *See, e.g.*, *United States v. Williams*, No. 21-cr-377 (BAH), ECF No. 88 at 5–7; *United States v. Griffin*, 549 F. Supp. 3d 49, 52–58 (D.D.C. 2021) (TNM) (18 U.S.C. § 1752(a)(1)); *United States v. Mostofsky*, No. 21-cr-138 (JEB), 2021 WL 6049891, at *8–13 (D.D.C. Dec. 21, 2021) (18 U.S.C.§ 1752(a)(1)); *United States v. Nordean*, No. 21-cr-175 (TJK), 2021 WL 6134595, at *4–12, *14–19 (D.D.C. Dec. 28, 2021) (18 U.S.C. § 1752(a)(1), (2)); *United States v. Andries*, No. 21-cr-93 (RC), 2022 WL 768684, at *3–17 (D.D.C. Mar. 14, 2022) (18 U.S.C. § 1752(a)(1),(2)); *United States v. Puma*, No. 21-cr-454 (PLF), 2022 WL 823079, at *4–19 (D.D.C. Mar. 19, 2022) (18 U.S.C. § 1752(a)(1), (2)); *United States v. Bingert*, No. 21-cr-91 (RCL), 2022 WL 1659163, at *3–11, *12–15 (D.D.C. May 25, 2022) (18 U.S.C. § 1752(a)(1)).

(D.D.C. 2002) (CKK); *United States v. Puma*, 596 F. Supp. 3d 90, 96 (D.D.C. 2022) (PLF) ("This Court concludes that… 18 U.S.C. § 1752 [is] not unconstitutionally vague."); *United States v. Bozell*, No. 21-CR-216 (JDB), 2022 WL 474144, at 16 ("§ 1752 "is clear[,] gives fair notice of the conduct it punishes, and [does not] invite arbitrary enforcement."); *United States v. Nordean*, 579 F. Supp. 3d 28, 60 (D.D.C. 2021) (TJK) (§ 1752(a)(1) and (a)(2) are "not unconstitutionally vague"); *United States v. Griffin*, 549 F. Supp. 3d 49, 57 (D.D.C. 2021) (TNM) ("This law is no trap awaiting the unwary"); *United States v. Caputo*, 201 F. Supp. 3d 65, 72 (D.D.C. 2016) (CRC) ("18 U.S.C. § 1752(a)(1) is… not void for vagueness.").

Case law is clear that § 1752(a)(2) is not unconstitutionally overbroad, and therefore, the Court finds that Defendant's motion to dismiss Count Three must fail.

\*       \*       \*

For the reasons stated above, the Court **DENIES** Defendant's [103] Motion to Dismiss Counts Two and Three.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Spencer's [102] Motion to Dismiss Count One and [103] Motion to Dismiss Counts Two and Three.

An appropriate Order accompanies this Memorandum Opinion.

                                               /s/
                                          COLLEEN KOLLAR-KOTELLY
                                          United States District Judge