**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 21-CR-147-1 (CKK)** |
| | : | |
| **CHRISTOPHER RAPHAEL SPENCER.,** | : | |
| | : | |
| **Defendant** | : | |

**STATEMENT OF FACTS FOR STIPULATED TRIAL**

The parties, by their undersigned counsel, hereby submit this Statement of Facts for the Stipulated Trial.

**I.**   **ELEMENTS**

**COUNT ONE**

The essential elements of the offense of obstruction of an official proceeding and aiding and abetting, in violation of Title 18, United States Code, Section 1512(c)(2), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant attempted to or did obstruct or impede an official proceeding;

2. The defendant intended to obstruct or impede the official proceeding;

3. The defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and

4. The defendant acted corruptly.

The term "official proceeding" includes a proceeding before the Congress.

The government further alleges that the defendant aided and abetted others in committing obstruction of an official proceeding. To satisfy its burden of proof in proving that the defendant aided and abetted others in committing this offense, the government must prove the following beyond a reasonable doubt:

1. Others committed obstruction of an official proceeding by committing each of the elements of the offense charged;

2. The defendant knew that obstruction of an official proceeding was going to be committed or was being committed by others;

3. The defendant performed an act or acts in furtherance of the offense;

4. The defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding; and

5. The defendant did that act or acts with the intent that others commit the offense of an obstruction of an official proceeding.

## COUNT TWO

The essential elements of the offense of entering or remaining in a restricted building or grounds, in violation of Title 18, United States Code, Section 1752(a)(1), each of which the government must prove beyond a reasonable doubt, are:

1 The defendant entered or remained in a restricted building or grounds without lawful authority to do so; and

2. The defendant did so knowingly.

## COUNT THREE

The essential elements of the offense of disorderly or disruptive conduct in a restricted building or grounds, in violation of Title 18, United States Code, Section 1752(a)(2), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;

2. The defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions;

3. The defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

**<u>COUNT FOUR</u>**

The essential elements of the offense of disorderly or disruptive conduct in a Capitol building or grounds, in violation of Title 40, United States Code, Section 5104(e)(2)(D), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant engaged in disorderly or disruptive conduct in any of the United States Capitol buildings;

2. The defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and

3. The defendant acted willfully and knowingly.

**<u>COUNT FIVE</u>**

The essential elements of the offense of parading, demonstrating, or picketing in a Capitol building, in violation of Title 40, United States Code, Section 5104(e)(2)(G), each of which the government must prove beyond a reasonable doubt, are:

1. The defendant paraded, demonstrated, or picketed in any of the United States Capitol buildings;

2. The defendant acted willfully and knowingly.

**II.**   **<u>STATEMENT OF OFFENSE</u>**

If the case proceeded to trial, the defendant agrees the government would have elicited the following evidence:

*The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2.      On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.  On January 6, 2021, the U.S. Capitol was closed to members of the public due to the COVID-19 pandemic and because the Vice-President of the United States was visiting.   The presence of the Vice-President at the U.S. Capitol rendered it a restricted building.

3.      On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in in the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m.  Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5.      At approximately 2:00 p.m., certain individuals in the crowd forced their way through,

up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6.     At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts.  The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7.     Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured.  The proceedings resumed at approximately 8:00 p.m. after the building had been secured.  Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.\

### *Christopher Spencer's Participation in the January 6, 2021, Capitol Riot*

8.      The defendant, Christopher Raphael Spencer, lives in Pilot Mountain, North Carolina. On the evening of January 5, into the morning of January 6, the defendant traveled from North Carolina to Washington, D.C., by car with his wife, Virginia Marie "Jenny" Spencer, and their minor child. The purpose of the defendant's trip to Washington, D.C., was to protest Congress' certification of the Electoral College.

9.      On January 6, the defendant and his wife walked to the U.S. Capitol passing the bike rack fences which were set up around the perimeter. Chris and Jenny Spencer spent time in the crowd by the inauguration stage on the west side of the U.S. Capitol building, observing members of the crowd attacking law enforcement repeatedly as they tried to keep the crowd away from the building. Chris also observed people climbing the walls and scaffolding and saw police shooting pepper balls into the crowd. Chris and Jenny Spencer then went up the northern set of stairs underneath the scaffolding to the northwest terrace near the Senate wing of the building.

10.      At approximately 2:19 p.m., Chris and Jenny Spencer entered the Senate Wing Door, which had been broken open not long before, with windows that were broken out on either side. Chris and Jenny Spencer then went into the Crypt where other crowd members again attacked a line of officers trying to hold back the crowd. During this time, Chris filmed a Facebook live video during which he stated, inter alia, "Bro, they just stormed the Capitol. Bro…pushed the cops out of the way, everything…took it over." This video has been provided to the Court as **Exhibit 1**. Spencer also yelled "Don't stop!" to rioters as they surged forward. This video has been provided to the Court as **Exhibit 2**.

11.      They went through the Crypt and up the stairs to the second floor. There, Chris and Jenny Spencer went briefly into a hallway of offices belonging to Speaker Pelosi while Chris

livestreamed video in which he said, "Where's Nancy's office?" This video has been provided to the Court as **Exhibit 3**.

12.     Chris and Jenny Spencer crossed through Statuary Hall and joined another crowd in the Statuary Hall Connector outside the House of Representatives who were trying to gain access to the House Chamber, wherein members of Congress were sheltering. During this time, Chris continued to film a video in which he said, "Who would've knew (sic) the first time I ever come (sic) would be to storm?" This video has been provided to the Court as **Exhibit 4**.  Outside the House Chamber, Chris filmed a video in which he yelled, "Kick that motherfucker open!" in reference to the House Chamber door. This video has been provided to the Court as **Exhibit 5**.

13.     After a time, they went down the hall towards the east side of the building where Chris continued to film himself saying "What up, Alec? We done (sic) stormed the Capitol building, bro. They done (sic) teared us." This video has been provided to the Court as **Exhibit 6**. Chris also yelled "Smile motherfucker! Smile bitch! Fucking traitor!" to Capitol Police who were then involved in a scuffle with another rioter. This video has been provided to the Court has **Exhibit 7**. Chris and Jenny Spencer ultimately exited the Capitol onto the portico outside the House of Representatives on the east side, having spent just over 30 minutes inside the Capitol.

14.     Chris Spencer knew at the time he entered the U.S. Capitol Building that he did not have permission to enter the building.  The defendant obstructed, influenced, and impeded an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

Without waiving any arguments set forth in Mr. Spencer's Motion to Dismiss Counts 1, 2 and 3, the parties agree that if the Court finds the existence of these facts beyond a reasonable doubt, this

evidence would establish each and every element of the charged offenses in light of the Court's ruling on the Motion and without waiving defendant's objection to the Court's ruling.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By: */s/*
Douglas Collyer
N.D.N.Y Bar No. 519096
Assistant United States Attorney
United States Attorney's Office
Detailee
601 D Street, N.W.
Washington, DC 20530
Phone: (602) 514-7500
E-mail:
douglas.collyer@usdoj.gov

<u>DEFENDANT'S ACCEPTANCE</u>

I have read the foregoing Statement of Facts for Stipulated Trial, and I have discussed this proffer fully with my attorney, Ubong Akpan, Esquire.  I fully understand this proffer, and I accept it without reservation.  I do this voluntarily and of my own free will.  No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date _____          _____
                                              Christopher Raphael Spencer
                                              Defendant

<u>ATTORNEY'S ACKNOWLEDGMENT</u>

I have read every page of this Statement of Facts with my client, Christopher Raphael Spencer, and fully discussed it with my client.

Date: _____          _____
                                              Ubong Akpan, Esq.
                                              Attorney for Defendant Christopher Raphael Spencer