UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CHRISTOPHER SPENCER,<br><br>      Defendant. | Criminal No. 21-cr-147-1 (CKK) |

MEMORANDUM OPINION
(February 13, 2024)

For his actions as a member of the riot at the United States Capitol on January 6, 2021, Defendant Christopher Spencer was charged by indictment with five counts, including 18 U.S.C. § 1512(c)(2).  *See* [14] Superseding Indictment.  Defendant has indicated that he will not be accepting a plea offer but will be proceeding to trial; a stipulated trial is currently scheduled for February 21, 2024.  Defendant filed the pending [113] Motion to Continue Stipulated Trial, in which he seeks a continuance of the stipulated trial date and to stay proceedings in this matter pending the Supreme Court's resolution of *United States v. Fischer*, 64 F.4d 329 (D.C. Cir. 2023), *cert. granted*, No. 23-5572, 2023 WL 8605748 (Dec. 13, 2023).

Upon consideration of the briefing,[1] the relevant legal authorities, and the entire record, the Court **DENIES** Defendant's [113] Motion to Continue Stipulated Trial.

---

[1] The Court's consideration has focused on the following: Defendant's Motion, ECF No. 113 (Def.'s Mot."); United States' Opposition, ECF No. 115 ("Gov.'s Opp'n").  In an exercise of its discretion, the Court has concluded that oral argument would not be helpful in the resolution of the Motion.

1

# I. BACKGROUND

## A. Charged Offenses

Defendant Christopher Spencer is charged by indictment with five counts: (1) Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2; (2) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); (3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); (4) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (5) Parading, Demonstrating, or Picketing in any of the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(G).

## B. Certification of the 2020 Presidential Election and Capitol Riot

The Twelfth Amendment of the United States Constitution provides that, after the members of the Electoral College "meet in their respective states and vote by ballot for President and Vice-President," they "shall sign and certify [their votes], and transmit [them] sealed to the seat of government of the United States, directed to the President of the Senate." U.S. Const. amend. XII. The Vice President of the United States, as President of the Senate, must then, "in the presence of the Senate and House of Representatives, open all the certificates[,] and the votes shall then be counted." *Id.* To count the votes and "declar[e] the result" of the Electoral College, federal law mandates that "Congress shall be in session on the sixth day of January succeeding every meeting of the electors" and that "[t]he Senate and House of Representatives shall meet in the Hall of the House at the hour of 1 o'clock in the afternoon on that day." 3 U.S.C. §§ 15-

16.

According to the Government's Complaint, pursuant to the Constitution and federal law, Congress convened in a joint session on 1:00 PM on January 6, 2021, to count the votes of the Electoral College and certify the results of the 2020 Presidential Election that had taken place on November 3, 2020. *See* Compl. at 2. With then-Vice President Michael R. Pence presiding, proceedings began and continued until 1:30 PM, when the United States House of Representatives and the United States Senate adjourned to separate chambers within the Capitol to debate and consider an objection to the Electoral College vote from the State of Arizona. *Id.* Vice President Pence continued to preside in the Senate chamber. *Id.*

Shortly before noon, then-President Donald J. Trump took the stage at a rally of his supporters staged just south of the White House. *Trump v. Thompson*, 20 F.4th 10, 17 (D.C. Cir. 2021). Then-President Trump declared that the election was "rigged" and "stolen," and urged the crowd to "demand that Congress do the right thing and only count the electors who have been lawfully slated." *Id.* at 18 (cleaned up). During and after then-President Trump's speech, a mass of attendees marched on the Capitol. *See id.*

As they gathered outside the Capitol, the crowd faced temporary and permanent barricades and Capitol Police positioned to prevent unauthorized entry to the Capitol. Compl. at 2. Around 2:00 p.m., "individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts." *Id.* These violent acts caused members of the Senate and House of Representatives to evacuate the chambers of

the Capitol and suspend the certification process of the presidential election results. *Id.* The violent riot "desecrated [the Capitol], blood was shed, and several individuals lost their lives." *Thompson*, 20 F.4th at 19. All told, "[t]he events of January 6, 2021 marked the most significant assault on the Capitol since the War of 1812." *Id.* at 18–19 (footnote omitted).

### C. Events Specific to Defendant

According to the Complaint, Defendant Christopher Spencer was present inside various areas of the Capitol Building on January 6, 2021. In the Capitol Crypt, Defendant posted a Facebook livestream of himself yelling "Wooh! We in this motherf*cker!" and then saying ""Bro, they stormed the Capitol, bro… pushed the cops out of the way, everything… took it over." Compl. at 2–3. Defendant then rushed forward into the building and, along with the crowd, began chanting "Who's House? Our house!" and "Stop the steal!" *Id.* at 3.

Defendant also entered into the wing where then-Speaker of the House Nancy Pelosi's offices are located. *Id.* at 4. As he walked into the office hallway, he is heard saying on his Facebook livestream, "Where's Nancy's office?" *Id.*

U.S. Capitol surveillance video also captures Defendant Spencer inside Statuary Hall, where he said, "Who would've knew the first time I ever come would be to storm." *Id.* at 4–5. Defendant then moves towards the entry doors to the House of Representatives where a crowd is gathered chanting, "Stop the steal. Stop the steal." *Id.* at 5. He appears to yell "kick that motherfucker open!" as others are shouting "push" and attempting to push through the closed door. *Id.*

4

Defendant is also seen gathered in a hallway, with others heard taunting and yelling vulgarities at police officers; they are called "f*cking traitor," "pig," and "fascist." *Id.* As captured on his phone, Defendant turns his camera and said "What up Alec? We done stormed the Capitol building, bro. They done teared us." *Id.* When the crowd begins pushing furniture down the hallway toward the police officers, Defendant yells "Smile motherf*cker! Smile b*tch! F*cking traitor!" *Id.*

### D. Procedural History

On January 18, 2021, the Government filed its criminal complaint. *See generally* Compl. Defendant first appeared before Magistrate Judge Zia M. Faruqui on January 25, 2021. *See* Minute Entry, Jan. 25, 2021. The Government filed an Information on February 23, 2021, *see* Information, ECF No. 9, and an Indictment on March 10, 2021, *see* Superseding Indictment, ECF No. 14. Defendant pleaded "not guilty" to the charges in the Indictment. *See* Minute Order, March 31, 2021. Defendant is released on personal recognizance.

During a status hearing on August 1, 2023, Defendant Spencer indicated that he would not be accepting a plea offer at this time and instead wants to proceed to trial. The Court soon thereafter issued a [101] Pretrial Scheduling Order setting deadlines for various pretrial motions. Defendant filed a [102] Motion to Dismiss Count One and [103] Motion to Dismiss Count Two, which the Court denied. *See* [108] Order; [109] Mem. Op.

Defendant then indicated that he would be proceeding with a stipulated trial. *See* Minute Order, Oct. 13, 2023. This stipulated trial on all five counts has been scheduled

5

for February 21, 2024. On February 2, 2024, Defendant filed the pending [113] Motion to Continue Stipulated Trial. The Government filed a [115] Response. Defendant did not file a reply brief. The Court now turns to resolution of this motion.

## II. LEGAL STANDARD

Defendant Spencer cites to no rule of criminal or appellate procedure in support of his motion for a stay pending an appeal in a different case, and no rule expressly provides such authority. However, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 880 (1998) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936)); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997). Moreover, a party requesting a stay of proceedings "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255.

Other courts in this district have looked to four factors to guide consideration of whether to grant a stay in this situation—i.e., pending the Supreme Court's resolution of *Fischer*. *See, e.g.*, Mem. Op., *United States v. Carnell*, No. 23-cr-139 (D.D.C. Jan. 4, 2024) (BAH), ECF No. 75 at 2. Those are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure

the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 2–3 (citing *Nken v. Holder*, 556 U.S. 418, 433–34, (2009)). "When the defendant is the government, factors (3) and (4) merge." *Zukerman v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023) (citing *Nken*, 556 U.S. at 435).

### III. DISCUSSION

Among other charges, Defendant Spencer is charged with 18 U.S.C. § 1512(c)(2) and 2. As Defendant explains, because § 1512(c)(2) is the sole felony in his case, this charge will "drive the stipulated trial and the recommended Guidelines range." Def.'s Mot. at 1–2. He moves to continue the scheduled stipulated trial and stay proceedings in this matter until after the Supreme Court resolves *United States v. Fischer* concerning the scope of § 1512(c)(2).

A panel of the United States Court of Appeals for the District of Columbia Circuit has held that 18 U.S.C. § 1512(c)(2) covers "acts unrelated to investigations and evidence" and, therefore, encompasses the offense charged here. More specifically, the D.C. Circuit expressly stated that "[t]he statutory definition of 'official proceeding' under § 1512(c)(2)… includes a 'proceeding before the Congress'" such as the certification of the electoral college vote. *United States v. Fischer*, 64 F.4d 329, 342–43 (D.C. Cir. 2023).

The Supreme Court granted review in *Fischer* in December 2023. *See id.*, *cert. granted*, No. 23-5572, 2023 WL 8605748 (Dec. 13, 2023)   The question presented is: "Did the D.C. Circuit err in construing 18 U.S.C. § 1512(c) ('Witness, Victim, or Informant Tampering'), which prohibits obstruction of congressional inquiries and

7

investigations, to include acts unrelated to investigations and evidence?" *See* Petition for Certiorari, *Fischer v. United States*, No. 23-5572 (filed September 11, 2023). Defendant claims that "[i]t is anticipated that the Supreme Court will issue an opinion by June 2024." Def.'s Mot. at 1.

Defendant Spencer argues that the Supreme Court's resolution of *Fischer* will impact the validity of his conviction as well as what sentence may be appropriate. *Id.* at 2. He continues that proceeding with the stipulated trial and later sentencing will potentially prejudice him should the Supreme Court resolve *Fischer* in his favor and, additionally, is an inefficient use of judicial resources. *Id.* The Government opposes Defendant's motion, arguing that "[t]he resolution of *Fischer* will have no impact on the remaining four counts, or the resources expended to determine those allegations," and, additionally, that "[t]he government and the public have a strong interest in the timely adjudication of this case." Gov.'s Opp'n at 1.

The Court finds that Defendant has failed to demonstrate the requisite showing for a stay in this case. First, Defendant has not made a strong showing that he is likely to succeed on the merits. The D.C. Circuit has now had two opportunities to consider the application of the federal obstruction statute to the conduct charged in this case, and in both it upheld this application. *United States v. Robertson*, 86 F.4th 355 (D.C. Cir. 2023); *Fischer*, 64 F.4th 329. Additionally, all but one district court have agreed with that interpretation of § 1512(c)(2). *See id.* at 338. It cannot be disputed that *Fischer* is currently the binding law of this circuit. That the Supreme Court granted certiorari in *Fischer* does not establish that Defendant Spencer's § 1512(c) charge will be dismissed

or changed.

Second, there is no irreparable harm to Defendant Spencer should a stay be denied. He does not argue as such; instead, he states that "[p]roceeding to the stipulated trial and later sentencing… will *potentially* prejudice him should the Supreme Court resolve *Fischer* in the defendant's favor." Def.'s Mot. at 2 (emphasis added). However, it is uncertain if sentencing would even take place before the Supreme Court's decision. The Government even states that "[i]t is unlikely a [Presentence Report] could be prepared before the opinion in *Fischer* at this point," and even so, "any potential irreparable injury… can be addressed by a motion to continue sentencing." Gov.'s Opp'n at 5. Additionally, Defendant is charged with four other counts and is proceeding to a stipulated trial on all such counts. Any potential Supreme Court ruling adverse to the Government on § 1512(c)(2) would have no bearing on the other four misdemeanor charges alleged. And should the Supreme Court's decision in fact invalidate the application of § 1512(c)(2) as to Defendant Spencer, he could file a post-conviction appeal. Where a defendant can raise issues on appeal, irreparable harm is far from "certain" or "actual." *See United States v. Gonzalez-Valencia*, No. 16-65-1 (BAH), 2022 WL 3978185, at *6 (D.D.C. Sept. 1, 2022) (citing *United States v. Sensi*, 879 F.2d 888, 892 (D.C. Cir. 1989)).

Finally, the Government and the public have a significantly strong interest in reaching justice and closure in this case, which is based on events that happened now over three years ago, and for which Defendant was charged just shy of three years ago. *See* Superseding Indictment, ECF No. 14 (filed March 10, 2021). Defendant references

judicial efficiency, Def.'s Mot. at 2, but the Court's interest in efficiency is best served by proceeding with this case so as to avoid delays and backlog in its criminal docket, *cf. Carnell*, No. 23-cr-139, ECF No. 75 at 7.

This Court concurs with numerous other courts in this district that have declined to stay proceedings in cases related to the January 6, 2021 insurrection based on the Supreme Court's decision to hear *Fischer*. *See, e.g.*, *Carnell*, No. 23-cr-139, ECF No. 75 (denying motion to stay); *United States v. Warnagiris*, No. 21-cr-00382 (PLF), 2023 WL 6926491, at *2 (D.D.C. Oct. 19, 2023) (denying request to hold case in abeyance pending resolution of *Fischer*); Minute Order, *United States v. Michael Marroquin*, No. 23-cr-338, (D.D.C. Dec. 27, 2023) (JEB) ("Given that Defendant is charged with multiple other counts and that he will not be sentenced (if at all) before the Supreme Court decides *United States v. Fischer*, the Court ORDERS that his Motion to Stay is DENIED."); Minute Order, *United States v. Baez*, No. 21-cr-507 (D.D.C. Jan. 18, 2024) (PLF) (denying motion to stay proceedings pending resolution of *Fischer*); Minute Entry, *United States v. Nichols*, No. 21-cr-117 (RCL) (D.D.C. Dec. 21, 2023) (denying motion to continue trial pending resolution of *Fischer*); Motion Hearing Tr. at 43:16–19, *United States v. Dunfee*, No. 23-cr-36 (RBW), ECF No. 60 (D.D.C. Dec. 14, 2023) (denying motion to delay trial pending resolution of *Fischer* where "we are approaching almost three years since these events took place[,] [a]nd . . . there is an interest on the part of the people and the government to have these matters resolved as expeditiously as possible").

The Court finds that Defendant Spencer has not shown a need for a stay of proceedings nor a continuance of his stipulated trial.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Spencer's [113] Motion to Continue.

An appropriate Order accompanies this Memorandum Opinion.

   /s/                          
COLLEEN KOLLAR-KOTELLY
United States District Judge
